## Iris Korn

*v.*

## The Executor of Fredericka Becker, deceased.

On final hearing on bill and answer and proofs taken in open court.

*Mr. Carl Lentz,* for complainant.

*Mr. F. E. Marsh,* for defendant.

VAN FLEET, V. C.

This suit is brought to procure a decree declaring a release exe-cuted by the complainant to the defendant's testatrix inoperative and void. The defendant's testatrix was the guardian of the complainant under an appointment made by the orphans court of Essex county, on the 18th day of February, 1868. She was also the complainant's mother. As guardian of the complainant, she received, about the date of her appointment, $2,467. The complainant attained her majority on the 21st day of September, 1882. She had married two years previous, when about nine-teen years of age. In March, 1883, the complainant employed counsel to take proceedings against her guardian to compel her to account and pay her what she was entitled to. A citation re-quiring the guardian to account, returnable April 10th, 1883, was taken out and served. Subsequently, on the application of the counsel of the guardian, the time within which the account should be presented was extended by the court to May 8th, 1883, and like extensions were subsequently arranged between counsel. In the meantime, negotiations for a settlement without an account-ing before the court, were started by the counsel of the parties. These negotiations resulted in an agreement of settlement, which seems to have been carried out on the 16th day of June, 1883. The defendant's testatrix on that day paid, through her counsel, to the counsel of the complainant, the sum agreed upon, and the complainant thereupon executed a general release to the defend-ant's testatrix, releasing her both as guardian and as an individ-ual of and from all claims and demands whatever. The release was prepared by complainant's counsel; she signed it in his presence and acknowledged its due execution before him. This is the instrument which the complainant seeks to have declared invalid.

It is charged that the release was procured by fraudulent means. The complainant, in describing the method by which she was defrauded, says that when her guardian offered her the sum which she afterwards consented to take, her guardian told her that she was not entitled to her money until her youngest sister attained twenty-one years of age, and that unless she would

take what was then offered to her, she could get nothing for several years; that although this representation was false, her confidence in her mother induced her to believe it to be true, and being in great need of money, she accepted the sum offered under the pressure of her necessities and in reliance upon the truth of her mother's statement. She also says that, when the money was paid to her, she, at the request of her guardian and her guardian's counsel, signed some paper, but she does not remember what it was; that she did not understand, when she signed the paper, what it was, and was wholly ignorant of what her rights in the matter were. She further says that she did not learn that she had been defrauded in the settlement until after her guardian's death, which occurred just fifteen months after the execution of the release. Her grievance is that she was induced, by the misrepresentation of her guardian, to accept a less sum than she was legally entitled to.

This is the case made by the complainant's bill. If she has not proved it, her bill must be dismissed. She must stand or fall by the case made by her bill. I think it would be difficult to imagine a case where the proofs submitted to maintain an action show more conclusively that the complainant has no ground of action than the proofs do in this case. All the evidence before the court was submitted on behalf of the complainant; none was offered by the defendant. The proofs show that from the inception of the litigation between the complainant and her guardian up until it was closed by the settlement, the complainant acted under the advice and direction of counsel of her own selection; that she was fully informed as to her rights, and also respecting the duties and obligations of her guardian; that after the litigation commenced no personal intercourse took place between the complainant and her guardian, but that all the negotiations leading up to the settlement were conducted by counsel, and were conducted with candor and fairness, and without the least attempt on the part of the counsel of the guardian, so far as appears, to deceive or mislead, or to get an unfair advantage for his client. The proofs further show that the complainant was informed by her counsel of each step in the negotiation; that

she had the benefit of his advice whenever she was called to speak or act; that she did nothing except by his advice, and that the instrument which she now assails as fraudulent, was drawn by him and executed by her in his presence to carry out an agreement which he had negotiated for her, and which she assented to after he had explained it to her and she had advised with him whether she should assent to it or not. The complainant makes no charge against her counsel. She accuses him of neither infidelity nor negligence nor unskillfulness; indeed, her bill conceeds the fact that in the negotiation of the settlement and in its consummation she was represented by counsel; nay, more, the bill is so framed as to produce the conviction in the reader's mind that when the agreement of settlement was made the parties were in personal contact, and the daughter completely subject to the mother's personal influence.

The facts put in evidence to impeach the release demonstrate, in my judgment, that its legal integrity is perfect. It is undoubtedly a highly salutary principle of equity jurisprudence that it is the duty of courts of equity to examine the transactions of persons between whom fiduciary relations have existed with the utmost watchfulness and caution, and the reason for the rule is, that such persons can seldom deal on terms of perfect equality. Generally, one possesses a more perfect knowledge concerning the subject-matter of the transaction than the other, and it is also ordinarily true that the one, in consequence of his former position of dependence, will naturally incline to yield a readier assent to the wishes of the other than he will to those of a stranger, and will also, as a general rule, receive the statements of the other with less caution and more confidence in their truth than he will those of a stranger. But this principle has no application to this case. Before these parties came to deal with each other in respect to the matter now under consideration, the bond of confidence which had previously existed between them had been dissolved; distrust and fear had taken the place of confidence and respect; the parties had assumed a hostile attitude toward each other and were dealing with each other at arm's length, and so distrustful was each of the other that each had placed her–

·self under the guidance of a skilled champion, whose duty required him to exert himself to the utmost of his skill and ability for the protection of his client's interest. Being thus guarded, it was impossible for the defendant's testatrix to defraud the complainant except she first corrupted her counsel. Nothing of that kind is charged. No fraud is proved, nor do the proofs show that any advantage was taken of the complainant in the settlement, or that anything was withheld from her to which she was justly entitled.

The complainant's bill must be dismissed, with costs.